UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN ANSAY, SR., and SANDY GALLO, Individually and as Administrators of THE ESTATE OF JOHN ANSAY, JR., <br><br> Plaintiffs, <br><br> v. <br><br> HOPE FISHERIES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) C.A. No. 1:20-CV-0478-MSM-LDA ) ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the plaintiffs, John Ansay, Sr. and Sandy Gallo's, Motion to Compel the statement of Timothy Diaz, taken by Neil Stoddard, a marine casualty investigator. (ECF No. 14.) The defendant, Hope Fisheries, Inc., argues that the statement is not discoverable under either the work product doctrine, the attorney client privilege, or self-critical analysis privilege. Because the Court finds that the statement is not discoverable under the work product doctrine and the plaintiffs have not demonstrated substantial need for its discovery, the Court DENIES the plaintiffs' Motion.

### I.   BACKGROUND

On December 30, 2018, Hope Fisheries' commercial fishing vessel, the F/V *Mistress*, left its homeport of Point Judith Rhode Island, with a crew of three: the vessel's captain and sole owner, Oscar Diaz; his son and first mate, Timothy Diaz; his

1

nephew and deckhand, John Ansay, Jr.  In the early morning hours of January 1, 2019, approximately three miles east of Block Island, the *Mistress* began taking on water.  The crew's efforts to abate the influx of water were unsuccessful and the crew attempted to abandon the vessel via the life raft.

Timothy Diaz, the only crew member to make it onto the life raft, was rescued by another fishing boat that responded to the *Mistress*'s mayday call.  Sadly, Oscar Diaz and John Ansay, Jr. were lost at sea, despite a U.S. Coast Guard ("USCG") search and rescue mission.  The *Mistress* never was recovered.

On January 3, 2019, the USCG and the Rhode Island Department of Environmental Management interviewed Mr. Diaz.  (ECF No. 15-1 at 9.)  The USCG recorded the interview but it appears that neither party has, or has sought, that recording.  *See id.*

On January 14, 2019, Hope Fisheries' insurer retained defense counsel.  (ECF Nos. 15-3 & 15-5.)  That day, defense counsel began coordinating with Neil Stoddard, an Accredited Marine Surveyor and marine casualty investigator, hired by the insurer.  *Id.*  Also that day, defense counsel reported by email to the insurer that Mr. Stoddard would meet with Mr. Diaz and that defense counsel spoke with Mr. Stoddard about "what info we need to evaluate any potential P&I claims further." (ECF No. 15-5.)  Defense counsel further noted that "[m]ulitple people already have been asking about compensation but we need to make absolutely certain we are dealing with the appropriate person or persons who could make a claim and/or are the appropriate beneficiary or beneficiaries." *Id.*

2

On January 21, 2019, Mr. Stoddard conducted a recorded interview of Mr. Diaz lasting twenty minutes. (ECF No. 15-4.) Mr. Stoddard states by way of affidavit: "I asked Mr. Diaz specific questions that I considered to be important based upon my experience as a marine casualty investigator and on my conversation with defense counsel." *Id.*

On February 1, 2019, the defendant's insurer finalized an advance to Sandy Gallo, John Ansay, Jr.'s mother, in the amount of $5,000, "… against any settlement, award or judgment related to any and all possible claims which the estate of [John Ansay], or [Ms. Gallo], might have because of [John Ansay's] presumed death." (ECF No. 15-2.)

The USCG issued a report, dated January 2, 2020, on the sinking of the *Mistress*. (ECF No. 14-7.) Although it could not come to a definitive cause of the sinking due to the lack of physical evidence, the USCG theorized that a contributing factor, based on the statement of Mr. Diaz, was that a bulkhead, or barrier, separating the below-deck fish hold compartment from another below-deck compartment further stern, called the lazarette, was not watertight. *Id.* at 21. This allowed water entering the lazarette to flow over the top of the bulkhead into the fish hold, contributing to the flooding of the stern. *Id.*

Mr. Diaz was deposed in this litigation over two days in November and December 2021 both in his individual capacity and as the Fed. R. Civ. P. 30(b)(6) designee of Hope Fisheries. Mr. Diaz testified that the statements attributed to him by the USCG concerning the bulkhead and the ingress of water into the fish hold were

wrong. Instead, he maintained that the bulkhead extended to the ceiling without any gap.

The plaintiffs now move to compel Mr. Diaz's statement and Hope Fisheries maintains that it is not discoverable.

## II.   DISCUSSION

### A. The Work-Product Doctrine

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The party asserting work product protection bears the burden of demonstrating its application. *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012).

The work product doctrine does not extend to materials prepared in the ordinary course of business for nonlitigation purposes. *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30 (1st Cir. 2009). But documents serving both a business purpose and a litigation purpose may be protected as work product only "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *State of Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in original). Therefore, no protection will attach to "documents that are prepared in the ordinary course of business or that would have

4

been created in essentially similar form irrespective of the litigation." *Id.* at 70 (internal citations omitted).

Though Hope Fisheries' insurer retained Mr. Stoddard, it did so in addition to defense counsel, who coordinated with Mr. Stoddard prior to the statement of Mr. Diaz regarding what information he would need to evaluate third-party liability claims. This matter is therefore distinguishable from two prior cases in this district that concerned a report ordered by an insurance adjuster, before the retention of defense counsel, to investigate coverage issues on a first-party claim.[1] *See Providence Piers, LLC v. SMM New England, Inc.* 12-532S, 2014 WL 11532189 (D.R.I. 2014); *Milder v. Farm Family Cas. Ins. Co.*, 08-310S, 2008 WL 4671003 (D.R.I. 2008). In those cases, the reports were made in the ordinary course of the insurance business. But here, the facts suggest that Mr. Stoddard's interview was performed as a joint effort with defense counsel in the anticipation of personal injury claims. *See Maine*, 298 F.3d at 70.

Moreover, due the tragic result of the *Mistress*'s sinking, it was reasonable for the defendant's insurer to anticipate that the claims would become litigation, either

---

[1] "When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation.... By contrast, when a liability insurer investigates a third party claim, the investigation is made in anticipation of claims which, if denied, likely will lead to litigation.... The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 538 (S.D. Ind. 1999).

by the claimants or by Hope Fisheries under the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*

The plaintiffs further argue that even if the report was made in anticipation of litigation, the possibility of litigation was too remote at the time of Mr. Diaz's statement to afford work product protection. Again, the defendant has demonstrated otherwise. First, defense counsel noted in an email sent prior to Mr. Diaz's statement that "[m]ultiple people" had asked about compensation and he informed Mr. Stoddard of what information he would need for potential liability claims. Second, on February 1, 2019, Hope Fisheries' insurer *finalized* an advance to decedent John Ansay's mother against any potential claims. *See Textron*, 577 F.3d at 29 ("From the outset, the focus of work product protection has been on materials prepared for use in litigation, whether the litigation was underway or merely anticipated.").

The plaintiffs point out, however, that, on March 24, 2021, Hope Fisheries filed in this court an action pursuant to the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501 *et seq. In re Hope Fisheries, Inc.*, 1:21-cv-00140-MSM-LDA. Pursuant to § 30511, such an action must be filed "within 6 months after a claimant gives the owner written notice of a claim." Hope Fisheries represented in the limitation of liability action that it received written notice of a claim from the Estate of Oscar Diaz on October 27, 2020, making the limitation of liability filing timely. The plaintiff argues that such a representation should indicate that Hope Fisheries was not anticipating litigation until late 2020, well after Mr. Stoddard's interview of Timothy Diaz.

But what suffices for "written notice" under § 30511 is not necessarily the same type of communication that would satisfy the work product doctrine. Here, defense counsel mentioned in an email sent prior to Mr. Stoddard's interview of Mr. Diaz that "[m]ultiple people already have been asking about compensation." The Court finds that this statement, under the totality of the facts here, is sufficient for Hope Fisheries to meet its burden to secure work product protection. Whether these communications regarding "compensation" satisfy § 30511 is a separate question best reserved for resolution in the pending limitation of liability matter. *See, e.g.*, *Martz v. Horazdovsky*, 33 F.4th 1157 (9th Cir. 2022).

### B. Substantial Need

A party may overcome work product protection if it can show a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The burden of proving this exception falls on the party seeking the discovery. *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 459 (1st Cir. 2000).

The Court finds that the plaintiffs have not met their burden to demonstrate substantial need. "[C]ourts deny the discovery of an adversary's work product on the basis of substantial need where a party may obtain information through other means." *Bryan Corp. v. ChemWerth, Inc.*, 296 F.R.D. 31, 42 (D. Mass. 2013). "Discovery of work product will therefore be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses." *Id.*

7

Here, Mr. Diaz has been available to the plaintiffs and they took the opportunity to depose him on two occasions.  The plaintiffs argue that Mr. Diaz may not recall certain details that he would have when he spoke to Mr. Stoddard, but a review of his testimony indicates otherwise.  While Mr. Diaz agreed with the general principle that one's memory is better closer in time to an incident, he maintained that he remembered *this* incident, where he lost two family members and nearly his own life, quite clearly.  Rather than a lack of recall, he testified to certain facts differently than as attributed to him in the USCG report and that the USCG erroneously attributed such facts (namely regarding the bulkhead) to him in its report.

Thus, even if as the plaintiffs suggest, Mr. Diaz's statement to Mr. Stoddard is considered purely factual work product—which is dubious considering that Mr. Stoddard fashioned some questions based upon input from defense counsel—a party must demonstrate substantial need for such discovery, which the plaintiffs have not done here.  *See In re Grand Jury Subpoena*, 220 F.R.D. 130, 144-45 (D. Mass. 2004).

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES the plaintiffs' Motion to Compel (ECF No. 14).  Having found that the statement at issue is protected under the work product doctrine, the Court does not proceed to analyze the other privileges raised by the defendant.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
August 18, 2022